Michael M. MORA and Anja E. Mora,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 5332.

United States District Court
E. D. Virginia,
Norfolk Division.

Dec. 6, 1966.

Elihu M. Shepard, Norfolk, Va., for plaintiffs.

Michael Rogovin, Asst. Atty. Gen., E. Moxley Featherston, Jerry Wells, Attys., Tax Div., Dept. of Justice, Washington, D. C., C. Vernon Spratley, Jr., U. S. Atty., James A. Oast, Jr., Asst. U. S. Atty., Norfolk, Va., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BUTZNER, District Judge. (from the bench)

The plaintiffs, Michael M. Mora and Anja E. Mora, taxpayers, brought this action against the United States to recover taxes paid by them for calendar year 1964 in amounts of $1,241.26 and $510.82. The parties have stipulated that the issue in the case is as follows:

"15. The issue in this case is directed solely to the question of whether or not the Interest Equalization Tax Act is applicable to acquisitions by United States persons of stock of a foreign issuer where the acquisitions in question were made by an agent of taxpayer, in England, with foreign currency (British) obtained from the sale of foreign securities (British), which currency was outside the United States at the time the Interest Equalization Tax Act became effective."

The parties have also stipulated the facts:

"1. Plaintiffs, Michael M. and Anja E. Mora, are husband and wife who at the time this suit was filed resided in Norfolk, Virginia. Mr. Mora will hereinafter be referred to as plaintiff.

"2. This court has jurisdiction under 28 U.S.C., Section 1346.

"3. For the quarter ended September 30, 1964, plaintiff paid what is commonly referred to as Interest Equalization Taxes in the amount of $1,712.87 together with interest in the amount of $39.21, by paying $1,241.26 on March 15, 1965, and $510.82 on May 3, 1965.

"4. The liability for said sum was based upon 26 U.S.C., 1964 ed., Section 4911. Section 4911 was added by P.L. 88–563, enacted September 2, 1964, and effective generally for transactions taking place on and after July 19, 1963.

"5. Plaintiff purchased the following British securities for the amounts and on the dates hereinafter indicated:

| Date | Security | Shares | Dollar Value |
|------|----------|--------|--------------|
| May 2, 1960 | Norcross | 500 | $ 3,867.73 |
| July, 1960 | Norcross | 500 | Stock Split |
| August 17, 1960 | Norcross | 1000 | 6,332.49 |
| September 19, 1961 | Norcross | 1000 | 2,402.95 |
| September 21, 1961 | Norcross | 1000 | 2,402.96 |
| February, 1961 | Norcross | 666 | Stock Split |
| | Total | 4666 | $15,006.13 |
| | | | |
| November 16, 1960 | Southcross | 111 | $ 88.58 |
| January 6, 1961 | Southcross | 400 | 2,794.66 |
| February, 1961 | Southcross | 306 | Stock Split |
| | Total | 817 | $ 2,883.24 |
| | | | |
| May 3, 1962 | Lambton Close | 2000 | $ 3,550.90 |
| July 1, 1964 | Lambton Close | 1000 | 1,755.18 |
| July 3, 1964 | Lambton Close | 2000 | 3,669.58 |
| July 7, 1964 | Lambton Close | 1000 | 1,772.92 |
| July 8, 1964 | Lambton Close | 1000 | 1,871.75 |
| July 8, 1964 | Lambton Close | 1300 | 2,426.20 |
| | Total | 8300 | $15,046.53 |
| | Total Cost all Purchases | | $32,953.90 |

"6. Plaintiff sold the following British securities for the amounts and on the dates hereinafter indicated;

| Date | Security | Shares | Dollar Value |
|------|----------|--------|--------------|
| July 7, 1964 | Norcross | 4000 | $ 8,589.42 |
| July 8, 1964 | Norcross | 666 | 1,366.41 |
| July 8, 1964 | Southcross | 817 | 1,846.50 |
| | Total Sales Price All Securities | | $11,802.33 |

"7. The initial 500 shares of Norcross [were] bought through Merrill Lynch, Pierce, Fenner and Smith in the United States. All other purchases and sales were handled by Close Brothers, Brokers, 55 Basinghall Street, London E.C. 2, England.

"8. On May 3, 1962, prior to the date of the Interest Equalization Act, plaintiff purchased 2000 Ordinary Shares of Lambton Close Holdings, Limited, hereinafter referred to as "Lambton" of a par value of 5 shillings each, for a total of 1,250 Pounds Sterling, which was paid for in American Funds, in the equivalent amount of $3,550.90. The purchase was made in dollars. The said shares are still held by plaintiff, in the custody of his London brokers, Close Brothers, and have never left the care of said brokers. All the other certificates of the security have been retained by the same brokers and were purchased with Sterling credits, in the plaintiff's favor, with the said brokers. All July 1964 purchases of stock of Lambton Close Holdings, Limited, were consummated in London and never handled in the United States.

"9. On July 1st, 3rd, 7th and 8th of 1964, plaintiff purchased 6,300 shares of Ordinary five shilling shares of Lambton stock for the sum of 4,107 Pounds Sterling, 11 Shillings and 9 Pence British Currency. The latter was purchased with Pounds Sterling funds to plaintiff's credit with his London brokers. No dollars were involved, but at the approximate dollar exchange rate, the sum of sterling hereinbefore indicated was equivalent to $11,501.23.

"10. Plaintiff is a "United States person" as defined by 26 U.S.C., 1964 ed., Section 4920(a) (4).

"11. The purchased Lambton stock is "stock" within the meaning of 26 U.S.C., 1964 ed., Section 4920(a) (2).

"12. Lambton is a "foreign issuer" as defined by 26 U.S.C., 1964 ed., Section 4920(a) (3).

"13. Except as noted in stipulation #15, *infra,* the acquisition by plaintiff of Lambton stock was within the meaning of the term "acquisition" as defined by 26 U.S.C., 1964 ed., Section 4912(a).

"14. None of the exemptions or exclusions contained in 26 U.S.C., 1964 ed., Sections 4913 through 4919, inclusive, are applicable to the instant case."

The pertinent portions of the Interest Equalization Tax Act are:

"§ 4911 [as added by Sec. 2, Interest Equalization Tax Act, P.L. 88–563, 78 Stat. 809]. IMPOSITION OF TAX.

"(a) *In General.* — There is hereby imposed, on each acquisition by a United States person (as defined in section 4920(a) (4)) of stock of a foreign issuer, or of a debt obligation of a foreign obligor (if such obligation has a period remaining to maturity of 3 years or more), a tax determined under subsection (b).

\* \* \* \* \* \*

(26 U.S.C. 1964 ed., Sec. 4911.)

"§ 4912 [as added by Sec. 2, Interest Equalization Tax Act, *supra*]. ACQUISITIONS.

"(a) *In General.* — For purposes of this chapter, the term 'acquisition' means any purchase, transfer, distribution, exchange, or other transaction by virture of which ownership is obtained either directly or through a nominee, custodian, or agent. A United States person acting as a fiscal agent in connection with the redemption or purchase for retirement of stock or debt obligations (whether or not acting under a trust arrangement) shall not be considered to obtain ownership of such stock or debt obligations. The exercise of a right to convert a debt obligation (as defined in section 4920(a) (1)) into stock shall be deemed an acquisition of stock from the foreign issuer by the person exercising such right. Any extension or renewal of an existing debt obligation

requiring affirmative action of the obligee shall be considered the acquisition of a new debt obligation.

\* \* \* \* \* \*

(26 U.S.C. 1964 ed., Sec. 4912.)"

The act became effective after July 18, 1963.

The taxpayers point to the President's speeches describing the tax as a measure designed to curb the outflow of gold from the United States to aid our balance of payments position. The taxpayers allege that no gold or currency flowed from the United States for the acquisition of the stocks purchased. These stocks were acquired in July 1964 using funds obtained by the taxpayers from sale of stocks in England. The English stocks had been purchased before the effective date of the Act.

The court concludes that the Act applies to the July 1964 purchase.

■■ Section 4912 defines the term "acquisition" to mean "any purchase, transfer, distribution, exchange, or other transaction by virtue of which ownership is obtained either directly or through a nominee, custodian, or agent." The statute is unambiguous. The Act can be construed, and must be applied, according to its plain words. The Act contains many exemptions. Congress did not exempt the purchases disclosed by the evidence in this case. Since the act is clear and unambiguous, it is not necessary to consider the legislative history; however, it may be pointed out that Congress was urged to write an exemption into the Act to exclude purchases made by individuals with foreign funds and, more specifically, to eliminate the tax on switching foreign investments, essentially what happened here. This matter was carefully considered, and exemptions on switching were not included in the Act.

While the parties have stipulated that the sole issue is the application of the tax to purchases mentioned in the facts, the taxpayers in oral argument have suggested that the tax is unconstitutional. The issue has not been briefed.

It could be disposed of by saying it is beyond the stipulated issue in which the parties joined.

■ The court believes that the claim of unconstitutionality is without merit. Congress can levy the tax under Article one, Section eight, Clause one, Constitution of the United States.

It is the judgment of the court that the plaintiff recover nothing and let the defendant recover its taxable costs.